IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHRISTOPHER SEAN CAPSHAW, *et al.*, §
§
      Plaintiffs, §
§
v. §      Civil Action No. 3:12-CV-4457-N
§
BRYAN K WHITE, *et al.*, §
§
      Defendants. §

## ORDER

This Order addresses Defendant Curo Health Services, LLC, f/k/a Curo Health Services, Inc. ("Curo") and Defendants Hospice Plus, L.P., Goodwin Hospice, LLC, and International Tutoring Services, LLC's (collectively, the "Hospice Providers") motion to strike the first amended joint complaint [143], Defendant Goodwin Home Healthcare Services, Inc.'s ("Goodwin") motion to dismiss [146], Defendant North Texas Best Home Healthcare Inc.'s ("North Texas Best") motion to dismiss [148], Defendant Curo's motion to dismiss [150], Defendant Suresh Kumar's motion to dismiss [153], Defendant Vinayaka Associates, LLC d/b/a A&S Home Health Care's ("A&S") motion to dismiss [155], Defendant BE Gentle HomeHealth Inc. d/b/a Phoenix Home Healthcare's ("BE Gentle") motion to dismiss [157], the Hospice Providers' motion to dismiss [160], Defendant Bryan K. White's motion to dismiss [161], Defendant One Point Health Services LLC's ("One Point") motion to dismiss [166], the Defendant Phoenix Hospice, Inc.'s ("Phoenix Hospice") motion to dismiss [168], the United States of America's motion to intervene partially for

good cause against Defendants Kumar and White [234], and Kumar's motion for leave to file sur reply to the government's motion to partially intervene [243].   The Court grants the motions in part and denies in part.

Because relators Kevin Bryan, Franklin Brock Wendt, and Sheila Whatley are barred by the first-to-file rule, the Court dismisses their claims under Rule 12(b)(1).  Because the first amended joint complaint (FAJC) does not plead the conspiracy allegations against the remaining Defendants with sufficient particularity, the Court dismisses the conspiracy claims without prejudice. Because the FAJC does not plead the allegations against Defendant Kumar and White with sufficient particularity under Rule 9(b), the Court dismisses the claims against them without prejudice.  Because the Court dismisses Bryan, Wendt, and Whatley, and because the Court does not find the Defendants are prejudiced by the filing of the FAJC, the Court denies Curo and the Hospice Providers' joint motion to strike the FAJC.  Because the United States is unopposed to Kumar's motion for leave to file surreply to the government's motion to partially intervene, the Court grants the motion.  The clerk shall file exhibit B as Defendant Kumar's surreply. *See* Mot. for Leave to File Sur Reply 243 Ex. B [243-2].  Because the claims against White and Kumar are dismissed, the Court denies the United States' motion to intervene partially [234] as moot.

## I. Origins of the Dispute

This case arises out of an alleged scheme of illegal kickbacks between the named Defendants.  First, the Sham Loan, Equity, and Rent Scheme involved alleged kickbacks paid

by White, Kumar, Curo and the Curo/White/Kumar Part A Companies[1] (collectively, "The Sham Loan, Equity, and Rent Scheme Defendants") to Dr. Yale Sage, Kirk Short, and Sheila Whatley, employees of American Physician Housecalls ("APH") in the form of

> (1) free equity interest for Sage and Short in at least one White/Kumar-owned company [BE Gentle], (2) sham loans in the amount of approximately $2,500,000.00 from White to APH (primarily owned by Sage), which were never intended to be repaid, and in fact were never repaid, (3) free leased space for APH for which rent was not paid on a monthly basis, and was never intended to be paid at fair market value, and (4) and [sic] cash.

FAJC ¶ 81 [87]. APH allegedly referred patients to the Sham Loan, Equity, and Rent Scheme Defendants because of these illegal kickbacks. *Id.* The FAJC sets forth representative examples of the allegedly kickback-induced illegal referrals. FAJC ¶¶ 99–132.

Second, the FAJC alleges a separate fraudulent scheme, the "Payola Scheme," in which the Payola Scheme Defendants[2] bought patient referrals with gifts and payments. *Id.*

---

[1] The Curo/White/Kumar Part A Companies include BE Gentle, North Texas Best, A&S, Goodwin, the Hospice Providers, Phoenix Hospice, Home Health Plus, Inc., and Excel Plus Home Health, Inc. FAJC ¶ 79. Defendant One Point is no longer included in any allegations regarding the Sham Loan, Equity, and Rent Scheme as the Court granted a partial dismissal as to the Relators' claim that One Point participated in the Sham Loan, Equity, and Rent Scheme. *See* Order, Nov. 28, 2016 [244].

[2] The Payola Defendants include White, Kumar, Curo, BE Gentle, North Texas Best, A&S, Goodwin, the Hospice Providers, Phoenix Hospice, Home Health Plus, Inc., Excel Plus Home Health, Inc., and One Point Health Services. FAJC ¶ 148. The FAJC originally also included Kumar's wife, Remani B. Kumar a/k/a Remani Amma, and Kumar's son, Sabari Kumar as Defendants in the Payola Scheme, but the Court granted their motions to dismiss. *See* Order, Nov. 28, 2016 [244].

¶ 153.  The Payola Scheme Defendants allegedly provided remuneration in exchange for patient referrals.  *Id.*  The purpose of the alleged Payola Scheme was "to defraud Medicare and Medicaid through an illegal kickback-for-referral scheme" in order to "maximize the payments they could receive from Medicare and/or Medicaid." *Id.* ¶ 149.  In pursuit of this purpose, the Payola Defendants allegedly cycled patients through the various Defendants' hospices "in order to 'game' Medicare's annual cap on payments for hospice patients, while still billing Medicare for home health services rendered to those patients while they were still 'on deck' [awaiting a new eligibility period] for further hospice care . . ." *Id.* ¶ 164.

Capshaw's original complaint, which he filed individually in 2012, alleged the Sham Loan, Equity, and Rent Scheme in violation of the FCA.  *See* Original Compl. ¶ 34 [2]. Relators Bryan and Wendt filed their complaint in 2013 alleging the Payola scheme in violation of the FCA.  *See generally* Bryan Complaint [2] *in U.S. ex rel. Bryan, et al. v. Hospice Plus LP, et. al*, Civil Action No. 13-CV-3392-N (N.D. Tex. filed Aug. 23, 2013). Capshaw, Bryan, and Wendt filed a motion to consolidate the cases, which the Court granted. *See* Order, May 15, 2014 [17].  Capshaw, Bryan, and Wendt then filed an amended complaint. *See* Am. Compl. [18].  Capshaw, Bryan, and Wendt filed their first amended joint complaint in 2015, adding Whatley, formerly a defendant, as a relator.  *See generally* FAJC [87].

Capshaw, Bryan, Wendt, and Whatley's (collectively, the "Relators") FAJC brings seven claims against the Defendants.  First, the Relators claim the Sham Loan, Equity, and Rent Scheme Defendants violated 31 U.S.C. § 3729(a)(1)(A) by participating in the Sham

Loan, Equity, and Rent Scheme, which violated the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7a, and the Stark Law, 42 U.S.C. § 1395nn(a)(1), causing false and/or fraudulent claims to be submitted to the United States government. *Id.* ¶ 338. Second, the Relators claim the Payola Defendants violated 31 U.S.C. § 3729(a)(1)(A) by participating in the Payola Scheme, which violated AKS and the Stark Law, causing false and/or fraudulent claims to be submitted to the United States government. *Id.* ¶ 343. Third, the Relators allege the Sham Loan, Equity, and Rent Scheme Defendants violated 31 U.S.C. § 3729(a)(1)(B) by participating in the Sham Loan, Equity, and Rent Scheme, which falsely stated or certified statements and reports used to comply with Medicare and Medicaid regulations which were material to a false or fraudulent claim. *Id.* ¶ 348. Fourth, the Relators claim the Payola Defendants violated 31 U.S.C. § 3729(a)(1)(B) by participating in the Payola Scheme, which falsely stated or certified statements and reports used to comply with Medicare and Medicaid regulations which were material to a false or fraudulent claim. *Id.* at 348. Fifth, the Relators claim the Sham Loan, Equity, and Rent Scheme Defendants violated 31 U.S.C. § 3729(a)(1)(C) by conspiring to participate in the Sham Loan, Equity, and Rent Scheme. *Id.* ¶ 358. Sixth, the Relators claim the Payola Defendants violated 31 U.S.C. § 3729(a)(1)(C) by conspiring to participate in the Payola Scheme. *Id.* ¶ 363. Seventh, the Relators claim the Sham Loan, Equity, and Rent Scheme Defendants violated the Texas Medicaid Fraud Prevention Law ("TMFPL") section 36.002. *Id.* ¶ 368.; *see also* TEX. HUM. RES. CODE § 36.001. Finally, the Relators claim the Payola Defendants violated TMFPL section 36.002. *Id.* ¶ 375.

The United States intervened on October 4, 2016 against Goodwin Hospice, LLC, International Tutoring Services LLC, Phoenix Hospice, and Curo. *See* Unopposed Mot. to Intervene [233]. The United States now moves to intervene against Defendants Kumar and White. *See* Mot. to Intervene Partially [234]. Kumar and White oppose the intervention. The Relators consent to the intervention. Because the Court dismisses the claims against White and Kumar, the government's motion to intervene is moot.

Defendants Goodwin, North Texas Best, Curo, Kumar, A&S, BE Gentle, the Hospice Providers, White, One Point Health Services, and Phoenix Hospice now move to dismiss co-relators Whatley, Bryan, and Wendt under the first-to-file rule, and move to dismiss the FAJC's claims under Rule 12(b)(6). The Court grants the motions to dismiss under the first-to-file rule and grants the motion to dismiss under 12(b)(6) in part and denies in part.

## II. THE COURT DISMISSES WHATLEY, BRYAN, AND WENDT AS CO-RELATORS

### A. *First-To-File*

Under the False Claims Act ("FCA") "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). When a "later-filed complaint alleges the same material or essential elements of fraud described in a pending *qui tam* action, § 3730(b)(5)'s jurisdictional bar applies." *U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009). The first-to-file jurisdictional bar is broad and operates to bar successive relators. *Id.* "The focus is on whether an investigation into the first claim would uncover the same fraudulent activity alleged in the second claim." *United States v. Planned Parenthood of*

*Houston*, 570 F. App'x 386, 389 (5th Cir. 2014). Thus, where "the later-filed complaint alleges the same material or essential elements of fraud described in a pending *qui tam* action, § 3730(b)(5)'s jurisdictional bar applies." *Branch*, 560 F.3d at 378. Likewise, "[t]he TMFPA's first-to-file bar operates the same way as the FCA's first-to-file bar." *Planned Parenthood*, 570 F. App'x at 389 n.3.

A relator cannot avoid the first-to-file jurisdictional bar "by simply adding factual details or geographic locations to the essential or material elements of a fraud claim against the same defendant described in a prior compliant." *Branch*, 560 F.3d at 378. This is because "a relator who merely adds details to a previously exposed fraud does not help 'reduce fraud or return funds to the federal fisc,' because 'once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds.'" *Id.* (quoting *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998)). For example, in *Planned Parenthood*, the Fifth Circuit held the first-to-file jurisdictional bar applied to a successive relator that alleged "fraud was committed by altering patient records and billing Medicaid programs for services other than those rendered," even though one relator alleged the services were never performed whereas the other relator alleged the services were improperly coded. 570 F. App'x at 390. Likewise, in *Branch*, the Fifth Circuit held that even new allegations of different geographic locations for the alleged fraud is insufficient "because an investigation into the fraudulent scheme alleged in the first complaint would result in finding identical fraudulent behavior, even across geographic locations." *Id.* at 390, n.4 (citing *Branch*, 560 F.3d at 374).

ORDER – PAGE 7

Nor can a relator avoid the first-to-file rule by either voluntarily intervening or being consolidated into a previously filed *qui tam* action. First, a putative relator cannot circumvent the first-to-file jurisdictional bar by amendment. *See U.S. ex rel. Denenea v. Allstate Ins. Co.*, 2011 WL 231780, at *3 (E.D. La. 2011) (noting that "a relator could not 'circumvent the first-to-file doctrine by seeking entrance to the action via amended complaint[.]'") (quoting *U.S. ex rel. Fry v. Guidant Corp.*, 2006 WL 1102397, at *6 (M.D. Tenn. 2006)). Second, a relator cannot escape the first-to-file bar by consolidating a *qui tam* case with a previously filed *qui tam* action. Allowing a relator to circumvent the first-to-file jurisdictional bar by consolidating a previously file action would undermine the FCA's goal of reducing duplicative *qui tam* litigation. *See Denenea*, 2011 WL 231780, at *3 ("a relator cannot avoid the first-to-file bar by consolidating his claim with an earlier action."); *see also Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995) (holding that relator could not avoid public disclosure bar by amending complaint to name an additional relator). Thus, if the second case does not pass the "essential facts" or "essential elements" standard applied to section 3730(b)(5), then it is barred under the first-to-file jurisdictional bar. The relators do not cite to, nor is the Court aware of, a case holding otherwise or explaining why the policy underlying the first-to-file would not also militate against allowing new relators to file similar cases and then having them consolidated with pending *qui tam* actions.

Here the co-relators' new additions to Capshaw's original complaint allege the same material or essential elements of fraud described in Capshaw's original complaint. While the

ORDER – PAGE 8

FAJC adds allegations into the specifics of the alleged schemes, it does not add details that would not be discovered by a government investigation into Capshaw's claim. Nor do the new allegations result in new fraudulent schemes or causes of action. Thus, Bryan, Wendt, and Whatley's additional allegations are exactly the kind of parasitic cases the first-to-file jurisdictional bar is designed to prevent.

### B. Bryan and Wendt Are Barred By The First-To-File Jurisdictional Bar

Bryan and Wendt are barred by the first-to-file jurisdictional bar as they filed their lawsuit after Capshaw, despite later being consolidated into this action. Capshaw's original complaint alleged a scheme of referrals and kickbacks between the defendants which violated the AKS and Stark. Compl. ¶¶ 31–32. Capshaw specifically alleged that the kickbacks included equity interests, loans which were never meant to be repaid, and leased space in return for patient referrals. *Id.* ¶¶ 34, 70–71. The Bryan Complaint alleged a similar scheme of kickbacks and fraudulent claims. *See generally* Compl. ("Bryan Complaint") [2] *in U.S. ex rel. Bryan, et al. v. Hospice Plus LP, et. al*, Civil Action No. 13-CV-3392-N (N.D. Tex. filed Aug. 23, 2013); *see also* Joint Mot. to Consolidate ¶ 11 [16]. The Bryan Complaint alleged that the Defendants provided remuneration in the form of cash and gifts, in violation of AKS. *See* Bryan Complaint ¶¶ 9, 13. Both complaints then allege that the Defendants falsely certified compliance with AKS via Medicare payment forms, in violation of the FCA. *See* Compl. ¶¶ 60–62, 67–69, 80–81; Bryan Complaint ¶¶ 98–101, 113. While Bryan's complaint alleged remuneration in a different form, Bryan's complaint alleges that the Defendants provided kickbacks, in violation of AKS, in exchange for referrals. *Id.* ¶ 14.

ORDER – PAGE 9

Thus the Bryan complaint alleges the same essential facts and claims of fraud as the Capshaw complaint.

Additionally, a government investigation into Capshaw's allegation of kickbacks in exchange for patient referrals among the Defendants would uncover the same fraudulent activity alleged in the Bryan Complaint. Capshaw's alleged fraudulent scheme put the government on notice to conduct an investigation into the Defendants, including the relationship between White and Kumar owned companies and APH. Moreover, Capshaw's original complaint included Whatley as a defendant, thereby putting the government on notice of her involvement in the allegedly fraudulent scheme. Much of Bryan's allegations include allegedly illegal remuneration paid to Whatley. *See* Bryan Compl. ¶¶ 42–43, 56. It follows then, that a government investigation would likely have discovered the details alleged in the Bryan complaint after an investigation into Capshaw's complaint.

Nor does the fact that the Bryan Complaint alleged the TMFPA claims for the first time alter the Court's conclusion. The TMFPA false claims provisions encompass the same fraudulent scheme as Capshaw's original FCA claims. *See United States ex rel. De Souza v. AstraZeneca PLC*, 72 F. Supp. 3d 561, 568 (D. Del. 2014). The additional defendants that Bryan and Wendt added to Capshaw's complaint do not change the result because an FCA action against a corporation works to bar subsequent actions alleging the same essential fraudulent scheme against its subsidiaries and affiliates. *See Branch Consultants*, 560 F.3d at 379 (citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1280 n.4 (10th Cir.

2004)). For the forgoing reasons, co-relators Bryan and Wendt are barred by the first-to-file jurisdictional bar.

### C. Whatley Is Likewise Barred By The First-To-File Jurisdictional Bar

Whatley, a former defendant in Capshaw's original complaint, is likewise barred by the first-to-file jurisdictional bar despite being added via amendment because she fails the "essential facts" or "essential elements" test. *See Denenea*, 2011 WL 231780, at *3. The Relators attempt to circumvent this result by arguing the addition of Whatley via amendment does not qualify as an "intervention" within the meaning of section 3730(b)(5). To support this argument, the Relators point to a recent unpublished opinion out of the Eastern District of Texas that adopted a narrow definition of intervention used by the Tenth Circuit in such cases. *See United States v. Homeward Residential, Inc.*, 2015 WL 3776478, at *4 (E.D. Tex. 2015). In *Homeward*, the court relied on a Tenth Circuit case holding that the plain legal meaning of the term "intervene" within section 3730(b)(5) "'implies intervention of the types set forth in Rule 24(b)(2), and the addition of parties does not constitute intervention.'" *Id.* (quoting *U.S. ex rel. Precision Co. v. Koch Indus., Inc.*, 31 F.3d 1015, 1017 (10th Cir. 1994)). Thus under *Precision*, a voluntarily added second relator would not be barred because it is not "an intervention" within the meaning of Rule 24. 31 F.3d. at 1017–18. The Court need not decide whether to adopt this reasoning, because the court in *Homeward* rejected the first-to-file jurisdictional bar because the relator "made new allegations within the amended complaint." *Homeward* at *4. In fact, the *Homeward* court based its decision to reject the reasoning of several other courts, which held the first-to-file jurisdictional bar

ORDER – PAGE 11

applied to adding relators via amendment, on the fact that those relators did not assert new allegations or claims. *Id.* That is not the case here. As discussed below, here, the new relators do not add additional allegations that satisfy the "essential facts" or "material elements" standard. Nor do the new allegations result in new causes of action against the Defendants. Accordingly, *Homeward* does not apply in this case.[3]

Because Whatley's allegations only add detail to the previously alleged fraud allegations, her claims are barred by the first-to-file rule. The FAJC alleges that Whatley, who began as a defendant in Capshaw's original complaint, provided over 107 gigabytes of detailed information. *See* FAJC ¶ 16. The amended complaint in this *qui tam* action alleged two fraudulent schemes, the Sham Loan, Equity, and Rent Scheme and the Payola Scheme. *See* Am. Compl. [18]. And while Whatley's allegations add details to the Payola Scheme, they allege the same essential elements and facts of the allegedly fraudulent Payola Scheme. For example, Whatley's additional allegations add specific instances and locations for the Payola Scheme, but she still alleges the same material elements of fraud, specifically the pattern of using gifts and payments to induce patient referrals. *See* FAJC ¶ 293. Whatley does allege specific instances of allegedly illegal kickbacks. *See* FAJC ¶¶ 277–283. But both the amended complaint and Capshaw's original complaint already alleged such a scheme of kickbacks and referrals. *See* Compl. ¶ 34. Thus Whatley's allegations only add detail to the previously alleged Payola scheme. Moreover, Capshaw alleged in the Sham Loan, Equity,

---

[3]The Court need not decide whether it agrees with *Homeward's* adoption of the Tenth Circuit's narrow definition of the term "intervene."

and Rent Scheme that the Defendants violated the FCA by offering equity interests in companies, loans that were never intended to be repaid, and leased space in exchange for patient referrals. Compl. ¶34 [2]. Whatley's additional allegations to this alleged scheme are minimal. *See* FAJC ¶ 81.

Whatley's additional allegations, in both fraudulent schemes, only add detail to Capshaw's fraud allegations. It is also of note that the FAJC does not allege any new causes of action as a result of the additional information provided by Whatley. Accordingly, Whatley is barred by the first-to-file rule and dismissed as a co-relator in this action.

### III. THE COURT GRANTS IN PART AND DENIES IN PART THE MOTIONS TO DISMISS UNDER RULE 12(B)(6)

Because the FAJC does not plead the conspiracy allegations, claims five and six, against the remaining Defendants with sufficient particularity, the Court dismisses the conspiracy claims without prejudice. Because the FAJC does not plead allegations against Defendant Kumar and White with sufficient particularity under Rule 9(b), the Court dismisses the claims against them without prejudice. The Court denies the remainder of the motions to dismiss.

### A. The Rule 12(b)(6) Standard

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the

plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B. The Rule 9(b) Standard

"[C]laims brought under the FCA must comply with the particularity requirements of Rule 9(b) for claims of fraud." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 204 (5th Cir. 2013) (citations omitted). Rule 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Under Rule 9(b), a plaintiff must include the "'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 721 (5th Cir. 2008) (citing *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999)). The Fifth Circuit has interpreted Rule 9(b) to require "at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged

fraud." *Steury*, 735 F.3d at 204 (citing *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010)).

A complaint alleging a violation of the FCA that does not allege the details of an actually submitted false claim, "may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). Thus, while a relator may not be required to prove details as to each false claim, the "standard nonetheless requires the relator to provide other reliable indications of fraud and to plead a level of detail that demonstrates that an alleged scheme likely resulted in bills submitted for government payment." *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893 (5th Cir. 2013).

### C. The False Claims Act

A person who "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," or "(C) conspires to commit a violation of [A or B]," violates the FCA and is subject to civil liability. 31 U.S.C. §3729(a)(1)(A)–(C). Claims under section 3729(a)(1)(A) are commonly referred to as "presentment claims." *U.S. ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 511 (N.D. Tex. 2012). Claims under section 3729(a)(1)(B) are commonly referred to as "false-statement claims." *Id.* Under the FCA, knowing and knowingly are defined to "mean that a person, with respect to information—(i) has actual knowledge of the information; (ii) acts

in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. §3729(b)(1). To properly plead a violation of the FCA, a FCA complaint must allege "[(1)] a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009); *see also United States ex rel. Karvelas v. Melrose–Wakefield Hosp.*, 360 F.3d 220, 225 (1st Cir. 2004) ("[T]he [FCA] attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment.") (quotations omitted); *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002) ("The submission of a claim is . . . the *sine qua non* of a False Claims Act violation.").

FCA liability for false-statement claims may be imposed "'when the contract under which payment is made was procured by fraud.'" *Longhi*, 575 F.3d at 467–68 (citing *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)). This is considered fraudulent inducement. *Id.* Thus even where "'subsequent claims for payment made under the contract were not literally false, [because] they derived from the original fraudulent misrepresentation, they, too, became actionable false claims.'" *Id.* (citing *United States ex rel. Laird v. Lockheed Martin Eng'g & Science Servs. Co.*, 491 F.3d 254, 259 (5th Cir. 2007)). Because "the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that

statute or regulation." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997).

The AKS and Stark Law are common "predicate violations" for imposing FCA liability. The AKS is a criminal statute which prohibits "the knowing or willful offering to pay, or soliciting, any remuneration to induce the referral of an individual for items or services that may be paid for by a federal health care program." *Nunnally,* 519 F. App'x at 893. "A violation of the AKS can serve as the basis for a FCA claim when the Government has conditioned payment of a claim upon the claimant's certification of compliance with the statute, and the claimant falsely certifies compliance." *Id.* "Stark bars entities from submitting claims to federal health care programs if the services forming the basis of the claims were furnished pursuant to referrals from physicians with which the entities had a financial relationship." *U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 663 (S.D. Tex. 2013); *see also* 42 U.S.C. § 1395nn(a)(1). The elements of a predicate AKS or Stark violation "must also be pleaded with particularity under Rule 9(b), because they are brought as a FCA claim." *Nunnally*, 519 F. App'x at 894; *see also Parikh*, 977 F. Supp. 2d at 666.

### D. The Court Dismisses the Conspiracy Claims Against All Defendants

Because the FAJC does not allege a conspiracy existed with sufficient particularity to satisfy Rule 9(b) or 12(b)(6), the Court dismisses the civil conspiracy claims against all defendants. "[T]o prove a False Claims Act conspiracy, a relator must show '(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim

allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement.'" *Grubbs*, 565 F.3d at 193 (alteration in original) (citing *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008)). Under Rule 9(b), "a plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy.'" *Grubbs*, 565 F.3d at 193 (citing *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008)).

In order to sufficiently plead a conspiracy, the relator must plead sufficient facts to establish there was an agreement to defraud the government. For example, in *Grubbs*, the relator alleged "specific language" attributed to two individual doctors that indicated "or at least from which a reasonable jury could infer, that they were in agreement between themselves and some members of the nursing staff to improperly record unprovided services for the purpose of getting fraudulent claims paid by the Government." *Id.* at 193–94. The language, coupled with the "temporal circumstances of the meeting" suggested a conspiratorial design. *Id.* at 194. The Fifth Circuit held that inferring that the two doctors were in agreement was not conclusory or speculative. *Id.* Importantly, the court held that to conclude that the remaining defendants, both individual doctors and the hospital, were also in agreement was a stretch. *Id.* "Even taking the allegations as true—that various doctors over a period of years each submitted certain false claims—does not, by itself, do more than point to a possibility of an agreement among them." *Id.* Thus, even evidence of a period of submitting false claims, while sufficient to state a claim under Rule 9(b) for violations of section 3729(a)(1) and 3729(a)(2), is not enough to state a claim for conspiracy under section

3729(a)(3). Likewise, in *Dekort v. Integrated Coast Guard Systems*, the court held that allegations that three defendants independently violated the FCA and had "agreed to or acquiesced in violations by the other Defendant(s), on other occasions," were insufficient to plead conspiracy. 705 F. Supp. 2d 519, 548 (N.D. Tex. 2010).

Here, the FAJC's allegations in support of the conspiracy claim are not pled with sufficient particularity to establish there was an agreement. For instance, the FAJC alleges that the Defendants "had the requisite knowledge and agreed to . . . maintain the cycle of self-interested and kickback-induced patient referrals . . . in order to bill and receive substantial Medicare and Medicaid payments from the government." FAJC ¶ 83. The FAJC also alleges the Payola Defendants "had the requisite knowledge and agreed to and/or ratified" the Payola conspiracy. FAJC ¶ 149. But the FAJC does not contain any factual allegations that suggest the existence of an unlawful agreement for either scheme. Specifically, the FAJC does not allege any facts that indicate any of the Defendants entered into an agreement to defraud the government. Unlike *Grubbs*, where the relator alleged certain doctor defendants verbally entered into an agreement at a meeting, the FAJC contains no allegations that any of the Defendants agreed to conspire together in either the Payola or Sham Loan, Equity and Rent Scheme. At best, the FAJC alleges a period of submitting false claims by individual actors or acquiescence to an unlawful scheme – neither of which is sufficient to plead an unlawful agreement existed.

Accordingly the FAJC fails to plead a conspiracy. Because the FAJC does not sufficiently allege that there was an agreement to conspire, the Court dismisses claims five and six against all remaining Defendants.

### E. The Court Grants Kumar and White's Motions to Dismiss

Because the FAJC does not allege with sufficient particularity that either White or Kumar committed a predicate violation of the FCA – either a violation of the AKS or Stark – and therefore filed a false claim or caused a false claim to be filed, they cannot be held liable in their individual capacities. Nor does the FAJC allege with sufficient particularity facts necessary to pierce the corporate veil. Accordingly, the claims against White and Kumar are dismissed.

First, the FAJC does not allege that either Kumar or White submitted a false claim as a direct violation of the FCA. "[T]he submission of a false claim is the *sine qua non* of a False Claims Act violation." *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 748 F. Supp. 2d 95, 116 (W.D. Tex. 2010) (citing *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009)). The FAJC does not allege Kumar or White, individually, made any false claims or statements to the government. Specifically, the FAJC fails to allege a single specific patient for which Kumar or White submitted a false claim.

Nor does the FAJC allege White or Kumar caused a false claim to be submitted. The FAJC fails to allege fraudulent inducement by White or Kumar, or how White or Kumar "caused the submission of false claims," as to either individual. *U.S. ex rel. Colquitt*, 864 F. Supp. 2d at 536 (noting that "the Defendants, as the source of the remuneration given to

the providers, caused the submission of those false claims (presentment liability) and/or caused the providers to make the false certifications that rendered the claims false (false-statement liability)").  Specifically, the FAJC fails to allege that Kumar or White violated the AKS or the Stark Act, individually, thereby fraudulently inducing a claim to be submitted to the government.  While the FAJC alleges numerous referrals made by the Curo, White, Kumar Companies as part of the Payola Sheme, allegedly in violation of the AKS, none of the factual allegations even insinuate that Kumar or White provided the remuneration that was allegedly provided in return for outside referrals.  *See* FAJC ¶¶ 211–215, 242–255.  The FAJC alleges the Curo, White, Kumar Companies provided the remuneration, not Kumar or White individually.  *Id.*  Individually, the FAJC alleges Kumar and White gave their employees extra remuneration, which is expressly allowed by the AKS.  *Id.* ¶¶ 298–303, 310; *see also* 42 U.S.C. § 1320(b)(3)(B).  Nor does the FAJC delineate between the allegedly impermissible remuneration and employee remuneration.  Moreover, the FAJC claims Kumar used gifts and money to secure referrals, but it is entirely devoid of any factual allegations that Kumar participated, individually, in the Sham Loan, Equity, and Rent Scheme and thereby caused a false claim to be submitted.  As for White, the FAJC alleges he gave free equity to Sage and Short, sham loans, and free leased space to APH, however the FAJC does not explain how providing this alleged remuneration would influence other physicians to refer patients.  Instead, the FAJC makes general allegations about White and Kumar's individual involvement in the scheme, rather than including particular allegations sufficient

to support the inference that White or Kumar submitted false claims or unlawfully induced referrals in violation of the FCA.

Likewise, claims seven and eight, which allege White and Kumar violated the TMFPA, are not pled with sufficient particularity.  TMFPA claims, because of their similarity to FCA provisions, are evaluated "under the FCA's well-defined legal requirements."  *U.S. ex rel. Williams v. McKesson Corp.*, 2014 WL 3353247, at *4 (N.D. Tex. 2014).  Accordingly the TMFPA claims against White and Kumar in their individual capacity are likewise dismissed.

The FAJC's argument that the corporate veil should be pierced to allow Kumar and White to be individually liable is equally unavailing.  "The corporate veil may be pierced to hold an alter ego liable for the commitments of its instrumentality only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003). The corporate veil may also be pierced "[w]hen a defendant causes a corporation to be used to perpetrate a fraud on the plaintiff for defendant's own benefit . . ."  *BAC Home Loans Servicing, LP v. Texas Realty Holdings, LLC*, 901 F. Supp. 2d 884, 910 (S.D. Tex. 2012) (citing *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 (5th Cir. 1996)).

Because the Court already determined the FAJC did not allege with sufficient particularity a fraud claim against the individual defendants, the argument that either White

or Kumar used his corporations as a sham to perpetrate a fraud is also insufficiently pled at this stage to impose personal liability. *See Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010) ("[Plaintiff] alleges that [defendant] used [corporation] as a sham to perpetrate a fraud, which entitles it to pierce the corporate veil and impose personal liability. This claim requires proof that [defendant] committed an actual fraud against it."); *see also Ryan, LLC v. Inspired Dev., LLC*, 2013 WL 12137012, at *10 (N.D. Tex. 2013) ("Because [plaintiff] has failed to state a claim for actual fraud, it cannot pierce the liability shield of the LLC and hold [defendant] individually liable for breach of [contract.]").

As stated in Part II(D), the FAJC does not state a claim for the conspiracy claims in Capshaw's fifth and sixth causes of action.[4]  Thus, the Court grants Kumar and White's motions to dismiss in their entirety.

### F.  The Court Denies the Remainder of the Defendants' Motion to Dismiss

The Court denies the remainder of the Defendants' motions to dismiss.  The FAJC sufficiently alleges a fraudulent scheme whereby kickbacks were used to induce patient referrals, a violation of AKS.  The FAJC also alleges the remaining Defendants certified compliance when presenting bills for payment to Medicare.

---

[4]The Court also notes that the FAJC's conspiracy claims against White and Kumar necessary fail on independent grounds.  A "[r]elator cannot plead a conspiracy to commit an FCA violation without successfully alleging an FCA violation."  *U.S. ex rel. Westbrook v. Navistar, Inc.*, 2012 WL 10649207, at *9 (N.D. Tex., 2012) (citing *United States ex rel. Coppock v. Northrup Grumman Corp.*, 2003 WL 21730668, at *14 n.17 (N.D. Tex. 2003) ("[S]econdary liability for conspiracy under § 3729(a)(3) cannot exist without a viable underlying claim.").

A relator need not allege every detail in a FCA claim raising the presentment provision. Generally, the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby" must be alleged to satisfy the particularity requirements of Rule 9(b). *United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999) (alteration in original). Because Rule 9(b) is context specific, the courts also allow relators to "allege particular details of a scheme to submit false claims along with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Davis v. Lockheed Martin Corp.*, 2010 WL 4607411, at *7 (N.D. Tex. 2010). In such cases, "courts have allowed the plaintiff to plead the fraudulent scheme with particularity and provide representative examples of specific fraudulent acts conducted pursuant to that scheme." *U.S. ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 768 (S.D. Tex. 2010) (quotations omitted). Thus where the scheme is alleged with sufficiently particular details, along with reliable indicia that claims were submitted, the complaint survives a motion to dismiss. *Grubbs*, 565 F.3d at 190; *see also Parikh*, 977 F. Supp. 2d at 671 ("*Grubbs* makes clear that it is the scheme, rather than individual instances of fraudulent claims, that an FCA relator must plead with particularity.").

Taking the pleadings of the FAJC as true, the FAJC alleges sufficient facts of a fraudulent scheme. The FAJC alleges referrals were given in exchange for "free equity interest for Sage and Short in at least one White/Kumar-owned company [BE Gentle], (2) sham loans in the amount of approximately $2,500,000.00 from White to APH (primarily

owned by Sage) . . . (3) free leased space for APH for which rent was not paid on a monthly basis . . . (4) and cash."  FAJC ¶ 81; *see also* FAJC  ¶¶ 285, 311–12.  The FAJC also gives specific examples of referrals from APH to the Defendants.  *See* FAJC ¶¶ 98–132.  These specific allegations include dates and the context of the referrals.  *Id.*

The FAJC also alleges reliable indicia that the Defendants submitted false claims to the government in violation of the FCA.  Specifically, the FAJC describes in detail the forms used by the Defendants to submit claims to the government for payment, including the Electronic Data Interchange enrollment form, Medicare program enrollment application, and annual cost reports.  FAJC ¶¶ 50, 55, 139–40, 142, 220, 321–24.  The FAJC's allegations regarding these forms specifically calls out the certification of compliance with the AKS and Stark law contained therein.  *Id.*  The FAJC also sets forth allegations regarding how the reports were entered into the billing system as part of the fraudulent scheme.  FAJC ¶¶ 163, 220.  Thus the FAJC alleges "a description of the billing system that the records were likely entered into—[giving] defendants adequate notice of the claims." *Grubbs*, 565 F.3d at 191.

The FAJC alleges representative examples of the fraudulent scheme with reliable indicia that claims were submitted to the government.  Accordingly, claims one, two, three, four, seven, and eight survive the motion to dismiss.

## CONCLUSION

Because their claims are barred by the first-to-file rule, the Court dismisses Kevin Bryan, Franklin Brock Wendt, and Sheila Whatley as relators.  The Court also dismisses the claims against Defendants Bryan K. White and Suresh Kumar in their individual capacities without prejudice.  The Court dismisses the conspiracy claims, claims five and six, as to all remaining Defendants, and denies the remaining Rule 12(b)(6) motions.  Capshaw has thirty days to replead his complaint to address the noted deficiencies.  Because the claims against White and Kumar are dismissed, the Court denies the United States' motion to intervene against White and Kumar [234] as moot.


Signed January 23, 2017.


David C. Godbey
United States District Judge