**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | § | |
| CHRISTOPHER SEAN CAPSHAW, et al., | § | |
| | § | CIVIL ACTION NO.3:12-CV-4457N |
| Plaintiffs, | § | |
| | § | (Consolidated with No. 3:13-cv-3392-B) |
| vs. | § | |
| | § | |
| BRYAN K. WHITE, M.D.; et al., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |
| | § | |

**BOYD & ASSOCIATES' MOTION**
**FOR APPROVAL AND AWARD OF STATUTORY ATTORNEYS'**
**FEES, EXPENSES AND COSTS PURSUANT TO 31 U.S.C. § 3730(d)**

# TABLE OF CONTENTS

I.   Introduction…………………………………………………………...1

II.  Background…………………………………………………………5

III. Summary of Litigation Efforts……………………………………7

IV. Analysis………………………………………………………12

    A. Rates Claimed, Justified…………………………………..12

V. Conclusion………………………………………………………20


CERTIFICATE OF CONFERENCE…………………………………...21

CERTIFICATE OF SERVICE…………………………………………..22

# TABLE OF AUTHORITIES

## Cases

*ACS Recovery Servs., Inc. v. Griffin*, 723 F.2d 518 (5th Cir. 2013) *(en banc), cert. denied,* 134 S. Ct. 618 (2013) ................................................................................................................ 2

*Arbaugh v. Y&H Corp*., 546 U.S. 500 (2006) .................................................................. 2

*Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216 (D. Colo. 2001) ............................. 10

*Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989) ................... 12, 13

*Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) .......................... 12, 13

*Callen v. Pa. R.R. Co.*, 332 U.S. 625, 68 S. Ct. 296, 92 L. Ed. 242 (1948) ................................ 11

*Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256 (5th Cir. 1995) ................................... 11

*Cia Anon Venezolana de Navegacion v. Harris,* 374 F. 2d 33 (5th Cir. 1967) ............................. 8

*Cruz v. Hauck*, 762 F.2d 1230 (5th Cir.1985) ............................................................................. 12

*Faris v. Williams WPC-I, Inc.,* 332 F.3d 316 (5th Cir. 2003)...................................................... 10

*Fox v. Vice*, 563 U.S. 826 (2011).................................................................................................. 7

*Fulgence v. J. Ray McDermott & Co*., 662 F.2d 1207 (5th Cir. 1981)........................................ 10

*Fulgham v. Wofford*, No. 4:13CV182-DMB-DAS, 2014 U.S. Dist. LEXIS 179909 (N.D. Miss. Oct. 28, 2014) ................................................................................................................. 10

*Goodman v. Smart Modular Techs., Inc.,* No. H-14-1380, 2016 U.S. Dist. LEXIS 112436 (S.D. Tex. Aug. 23, 2016) ............................................................................................................ 9

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................................... 6, 13

*In re Exxon Valdez*, 239 F.3d 985 (9th Cir. 2001) ...................................................................... 10

*In re Wilcox,* 438 B.R. 428 (Bankr. D. Colo. 2010) ................................................................... 10

*Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974)............... 12, 13, 14, 20

*Johnson v. Target Corp.*, No. 4:13-CV-182, 2014 U.S. Dist. LEXIS 112628 (E.D. Tex. Aug. 14, 2014) .................................................................................................................... 8

*Knighton v. Watkins*, 616 F.2d 795 (5th Cir. 1980) .................................................... 12

*Lawson v. McDermott, Inc.,* No. 94-1338 SECTION "C" (4), 1995 U.S. Dist. LEXIS 14679 (E.D. La. Oct. 4, 1995) .......................................................................................... 10

*Lozano v. Metro. Transit Auth.*, No. H-14-1297, 2016 U.S. Dist. LEXIS 94031 (S.D. Tex. July 19, 2016). ........................................................................................................... 10

*Marquette Bus. Credit, Inc. v. Gleason,* No. 14-cv-354 (MJD/LIB), 2015 U.S. Dist. LEXIS 71315 (D. Minn. Apr. 27, 2015) .......................................................................... 9

*Maynard v. Durham & Southern Railway Co.,* 365 U.S. 160, 161, 81 S. Ct. 561, 5 L. Ed. 2d 486 (1961) .......................................................................................................... 9

*Mid-South Towing Co v. Har-Win, Inc.,* 733 F.2d 386 (5th Cir. 1984)........................ 11

*Neal v. Honeywell Inc.*, 191 F.3d 827 (7th Cir. 1999) ................................................. 13

*Promotion in Motion v. Kenny's Candy Co.,* Civ. No. 97-3512 (JCL), 1999 U.S. Dist. LEXIS 22173 (D.N.J. June 24, 1999) ................................................................................ 8

*Reed Elsevier v. Muchnick*, 559 U.S. 154 (2010) ......................................................... 2

*Robinson v. Cason,* No. 01-11-00916-CV, 2013 Tex. App. LEXIS 8088 (Tex. App.—Houston [1st Dist.] July 2, 2013) .................................................................................... 8

*Robinson v. Shelby County Bd. of Educ.*, 566 F.3d 642 (6th Cir. 2009)....................... 10

*Sebelius v. Auburn Reg'l Med. Ctr.,* 133 S. Ct. 817 (2013)........................................... 2

*Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 538 (10th Cir. 2000)................. 5

*Smith v. Regional Transit Authority,* 756 F.3d 340 (5th Cir. 2014) ............................. 2

*Stovall v. City of Cocoa*, 117 F.3d 1238, 1242-43 (11th Cir. 1997)............................. 12

*Strange v. Gulf & South American Steamship Co., Inc.*, 495 F.2d 1235 (5th Cir. 1974) ......... 9, 11

*Theatre Time Clock Co. v. Motion Picture Advert. Corp.*, 323 F. Supp. 172 (E.D. La. 1971)  9, 11

*Thompson v. Cont'l Emsco Co.*, 629 F. Supp. 1160 (S.D. Tex. 1986) ........................................ 11

*United States ex rel. Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610 (6th Circ. 2007) .............. 6, 13

*United States ex rel. Hayes,* No. 16-705, 2017 U.S. App. LEXIS 5774 (2nd Cir. April 4, 2017) . 2

*United States ex rel. Jacobs v. Patrol Servs.*, 202 Fed. Appx. 357 (11th Cir. 2006).................... 13

*Unites States ex rel. Longhi v. Lithium Power Technologies, Inc.* et al, 575 F.3d 458 (5th Cir. 2009) ................................................................................................................................. 5

*United States ex rel. Todd Heath v. AT&T, Inc.*, 791 F.3d 112 (D.C. Cir. 2015, cert denied) ....... 1

*United States ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337 (4th Cir. 2009) ....................................... 13

*United States v. $186,416.00 in United States Currency*, 642 F.3d 753 (9th Cir. 2011).............. 12

*United States v. City of New Orleans*, 731 F.3d 434 (5th Cir. 2013) ....................................... 8, 11

*United States v. Purdue Pharma L.P.*, 600 F.3d 319 (4th Cir. 2010)........................................... 10

*Webb* v. *Dyer County Bd. of Ed.*, 471 U.S. 234, 105 S. Ct. 1923, 85 L. Ed. 2d 233 (1985) .......... 7

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) ................................................................... 2

*Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385 (1982) ............................................................ 2

## Statutes
31 U.S.C. § 3730............................................................................................................... 1, 3, 5, 6

## Rules
Fed. R. Civ. P. 12 ........................................................................................................................ 2

Fed. R. Civ. P. 54 ................................................................................................................ 3, 4, 6

Local Rule CV 54 ........................................................................................................................ 3

Qui Tam Plaintiff/Relators Kevin Bryan and Brock Wendt ("Relators") and their counsel, Boyd & Associates ("B&A"), as Relators' counsel and as assignees of Relators' interest in the attorneys' fees, expenses, and costs available under the statutory fees provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(d) ("Section 3730(d)") (Relators and B&A together, "Movants"), submit this Motion for Approval and Award of Statutory Attorneys' Fees, Expenses and Costs as provided by the FCA as a result of the United States' partial intervention and settlement with International Tutoring Services, LLC d/b/a Hospice Plus, Goodwin Hospice, LLC, Phoenix Hospice, L.P.[1], Hospice Plus, L.P. and Curo Health Services, LLC f/k/a Curo Health Services, Inc. ("Curo") (collectively, the "Settlement Defendants").[2]

## I.      Introduction

Relators have filed their motion to reconsider (ECF#285, 4/3/2017) the Court's order dismissing Bryan and Wendt as relators (ECF#256) based upon, respectfully, erroneous application of the FCA's First-to-File Rule. Relators' motion to reconsider shows that they were first to file as to the *Payola Scheme*, because the two (2) unlawful schemes were **not** the same, the persons being bribed and the goals of the schemes are **not** the same, the violated statutes are **not** the same, the injured real parties in interest are **not** the same, and the defendants are **not** the same as those in the earlier-filed Capshaw Complaint alleging the *Sham Loan, Rent and Equity* Scheme. ECF#285 at pp. 14-21. Additionally, Relators show that authorities conducting a focused analysis of the First-to-File Rule in light of Supreme Court precedent have concluded that the First-to-File Rule is **not** jurisdictional. ECF#285 at pp. 21-29. *United States ex rel. Todd Heath v. AT&T, Inc.*, 791 F.3d 112, 119-121 (D.C. Cir. 2015, cert denied) (First-to-File Rule **not** jurisdictional). *See*

---

[1] Relators moved to amend their complaint on June 30, 2016 [ECF#225] to substitute Phoenix Hospice, L.P for Phoenix Hospice, Inc. The Court has not ruled on that request. For purposes of the settlement, Phoenix Hospice, L.P. will be a Settlement Defendant.

[2] In support, Movants submit the Declaration of Samuel L. Boyd, App'x at 1-8.

*also, United States ex rel. Hayes,* No. 16-705, 2017 U.S. App. LEXIS 5774, at *9-10 (2nd Cir. **April 4**, **2017**)( "As a result, we join the D.C. Circuit in holding that the FCA's first-to-file rule "bears only on whether a *qui tam* plaintiff has properly stated a claim." *Heath*, 791 F.3d at 121. Accordingly, a district court does **not lack subject matter jurisdiction** over an action that may be barred on the merits by the first-to-file rule."). *See* 2017 U.S. App. LEXIS 5774 at *9-10, relying on the **bright-line test** for whether a statutory limitation is jurisdictional articulated by the **Supreme Court** holdings in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) and *reaffirmed* in *Sebelius v. Auburn Reg'l Med. Ctr.,* 133 S. Ct. 817, 824 (**2013**). The test is to "inquire whether Congress has clearly stated that the rule is jurisdictional; absent such a clear statement, . . . courts should treat the restriction as non-jurisdictional in character." *Hayes,* 2017 U.S. App. LEXIS 5774 *9-10 (internal quotation marks omitted) (quoting *Sebelius*, 133 S. Ct. at 824 (quoting *Arbaugh*, 546 U.S. at 515-516)). "Under this test, a provision that does **not** speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts will **not** be considered jurisdictional. Id. at *10 (internal quotation marks omitted) (quoting *Arbaugh*, 546 U.S. at 515 (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394 (1982))). The Supreme Court and Fifth Circuit reject Rule 12(b)(1) dismissals where the challenge was based on a statutory grant, or limitation, of a right of action, as opposed to a clear Congressional statement that a threshold limitation of the statute's scope shall count as jurisdictional. See, e.g., *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 515-16 (2006) (Title VII); *Reed Elsevier v. Muchnick*, 559 U.S. 154, 161-62 (2010) (Copyright Act); *Smith v. Regional Transit Authority,* 756 F.3d 340, 344 (5th Cir. 2014) (ERISA); *ACS Recovery Servs., Inc. v. Griffin*, 723 F.2d 518, 522-23 (5th Cir. 2013) *(en banc), cert. denied,* 134 S. Ct. 618 (2013) (ERISA); and *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981). Thus, even if Relators were not first to file, the Court did **not** lack jurisdiction over their claims. Moreover,

because the settlement agreement was reached prior to the Court's entry of its Order dismissing Bryan and Wendt, the settlement agreement **should be enforced** and, in fact**, is** being honored by the Settling Defendants *except* with regard to Relators' claims for statutory fees and expenses. Relators are entitled, *assuming arguendo* that their claims should have been dismissed, which Relators contest, to statutory fees pursuant to Section 3730(d) notwithstanding the subsequent event of dismissal as relators, since the Court did in fact have jurisdiction over the Bryan and Wendt claims.

Movants make this fee request by motion, Fed. R. Civ. P. 54(d)(2)(A), request that the attorneys' fees, expenses and costs be awarded them against the Settlement Defendants jointly and severally, and file this request prior to entry of a final judgment in the case[3] and thus within the time allowed by Fed. R. Civ. P. 54(d)(1) and 54(d)(2)(B)(i). Movants seek this award pursuant to Section 3730(d), Federal Rule of Civil Procedure 54(d), Local Rule CV 54.1, Relators' reservation of rights in the parties' settlement agreement documentation to seek their statutory fees, expenses and costs. Fed. R. Civ. P. 54(d)(2)(B)(ii) and in the Court's April 6, 2017, Order of dismissal (ECF#290). In support, pursuant to Fed. R. Civ. P. 54(d)(2)(B)(iii), Movants request statutory attorneys' fees, expenses and costs supported by their Timeslips entries, described below, in the amount of One Million One-Hundred Twenty-Two Thousand Nine-Hundred Five and 68/100 ($1,122,905.68) as follows:  (A) attorneys' fees for the three (3) years from July 2013 to July 25, 2016, the day that the DOJ disclosed to Relators that the Settlement Defendants had agreed to a settlement in principle in this case; (B) attorneys' fees from and after January 23, 2017, the date

---

[3] This motion is filed before entry of a final judgment but after the Court's entry of its Order of Dismissal (ECF#290 4/6/2017) of the Settlement Defendants, and during the pendency of Relators Bryan and Wendt's motion to reconsider (ECF#285 dated 4/3/2017) the Court's order dismissing Bryan and Wendt as relators (ECF#256).

of the Court's Order dismissing Relators Bryan and Wendt as relators (ECF#256) through April 3, 2017, incurred in efforts to protect Movants' right to recover their statutory fees, costs and expenses from the Settlement Defendants by requesting, respectfully, that the Court reconsider that Order due to errors in the opinion regarding the application of the First-to-File Rule; and (C) expenses during the two relevant timeframes. Based upon Relator's counsel's experience, as reflected in counsel's Declaration, Relators estimate their statutory attorneys' fees, expenses and costs in the event of an appeal to the Court of Appeals for the Fifth Circuit to be an additional approximately $150,000.00, in the event of a petition for rehearing *en banc* to be additionally approximately $30,000.00, in the unlikely event of a petition for writ of certiorari to the United States Supreme Court to be additionally approximately $50,000.00, and in the event the Supreme Court agrees to hear the case, additionally approximately $50,000.00, and request such fees in such event(s). Should Settlement Defendants agree to B&A's statutory requests, there should be no need for continued, reimbursable litigation expenses to prove up this statutory fee request and no need for a motion practice on this issue in the District Court. B&A therefore does not submit its supporting materials at this time. Fed. R. Civ. P. 54, Notes of Advisory Committee on Rules—1993 Amendment ("The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case. What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees and the amount of such fees (or a fair estimate)."). Should Settlement Defendants continue to oppose Relators' request for statutory fees, expenses, and costs, Relators will timely file their supporting materials in order to protect their right to statutory fees, costs, and expenses, pursuant to applicable rules or the Court's order. Relators have filed their Motion to Reconsider

(ECF#285) the Court's Order (ECF#256) dismissing them as relators. Additionally, Relators may file a motion to enforce the parties' settlement agreement, which was reached prior to the Court's order dismissing them.

## II. Background

This case involves two actions, now consolidated and pending in this Court. Relators and their Co-Relator Christopher Capshaw allege that Defendants violated the FCA by knowingly submitting false claims to Medicare for hospice and home health services tainted by illegal kickbacks through two (2) separate and distinct schemes. **First**, Defendant hospices, home health agencies, and their corporate and individual owners paid kickbacks, in the form of sham loans, free use of rental property, and free equity interests in their companies, to American Physician Housecalls ("APH") and its owners to induce patient referrals to these hospices and home health agencies ('**Sham Loan, Equity, and Rent Scheme**"). **Second**, Defendant hospices, home health agencies, and their corporate and individual owners paid kickbacks in the form of cash, gift cards, and other valuable items to employees at long-term care facilities in exchange for patient referrals ("**Payola Scheme**").

The award of fees, costs and expenses in this partially settled action under the FCA is **mandatory**, while the amount of the award, if not resolved with the Defendant, is within the district court's discretion. *U.S. ex rel. Longhi v. Lithium Power Technologies, Inc.* et al, 575 F.3d 458, 475-76 (5th Cir. 2009); 31 U.S.C. 3730(d)(1) & (d)(2); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 538, 543-544 (10th Cir. 2000). Relators are, by virtue of (1) their 2016 settlement

with the Settling Defendants, and (2) the express wording of the FCA statute, entitled to a recovery of reasonable and necessary attorneys' fees, costs, and expenses from Settlement Defendants.[4]

B&A submits this Motion to request approval for payment of their fees, expenses and costs clearly due and owing under relevant Fifth Circuit authority. *U.S. ex rel. Longhi, supra*. It is important to fundamental fairness that the Court facilitate the consideration and entry of an Order requiring that Settlement Defendants pay Relators' reasonable and necessary attorneys' fees and expenses, as requested herein, as provided under 31 U.S.C. § 3730(d)(1), (d)(2). ***The parties and counsel have entered into a Settlement Agreement, encompassed by oral and email communications, pursuant to which the total statutory attorneys' fees and expenses are to be paid by Settlement Defendants.*** As a result, the Court should determine the reasonable number of hours expended on litigation and the reasonable hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Relators' contract with B&A assigned to counsel the right to apply for and collect any statutory attorney's fee award. *Cf., United States ex rel. Gonter v. Hunt Valve Co., Inc*., 510 F.3d 610, 614 (6th Circ. 2007) (while the relator has the power to demand that the losing defendant pay reasonable fees, once such demand is made, the attorneys' right to such attorney fees vests)(multiple relator firms filed separate and distinct fee requests).

Relators are entitled to "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs," 31 U.S.C. § 3730(d)(1), (d)(2), in this successful action brought pursuant to the False Claims Act. *See also* Fed. R. Civ. P.

---

[4] *See* 31 U.S.C. § 3730(d)(1)-(2) ("Such person ["***the person bringing the action or settling the claim***"] **shall also receive** an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. **All such expenses, fees, and costs** shall be awarded against the defendant.").

54(d) (fees, costs, and expenses), 28 USCS § 1920 (costs).    The Court's statutory fees evaluation

process has been **re-emphasized** by the United States Supreme Court in a unanimous decision:

> "We emphasize, as we have before, that the determination of fees "should
> **not** result in a second major litigation." *Hensley*, 461 U.S., at 437, 103 S.
> Ct. 1933, 76 L. Ed. 2d 40. The fee applicant (whether a plaintiff or a
> defendant) must, of course, submit appropriate documentation to meet "the
> burden of establishing entitlement to an award." *Ibid.* But trial courts need
> not, and **indeed should not, become green-eyeshade accountants.** The
> essential goal in shifting fees (to either party) **is to do rough justice**, **not
> to achieve auditing perfection**. So trial courts may take into account **their
> overall sense of a suit**, and **may use estimates** in **calculating and
> allocating an attorney's time**. And appellate courts must give substantial
> deference to these determinations, in light of "the district court's superior
> understanding of the litigation." *Ibid.;* see *Webb* v. *Dyer County Bd. of Ed.*,
> 471 U.S. 234, 244, 105 S. Ct. 1923, 85 L. Ed. 2d 233 (1985). We can hardly
> think of a sphere of judicial decision making in which appellate
> micromanagement has less to recommend it."(emphasis added). *Fox v.
> Vice*, 563 U.S. 826, 838 (2011).

### III. Summary of Litigation Efforts

B&A was retained by Relators Kevin Bryan and Brock Wendt in July of 2013. Relators

filed a qui tam action on August 23, 2013 against Settlement Defendants (and others) (Civ. No.

3:13CV-3392 N, *Kevin Bryan, et al. v. Hospice Plus LP, et al.*), which was later consolidated with

Civ. 3:12-CV-4457-N, *Christopher Sean Capshaw, et al. v. Bryan K. White, et al,* by the Court on

May 15, 2014 (ECF#17).

Relators and their counsel have expended substantial amounts of time and expenses to

successfully prosecute the cases against Settlement Defendants. B&A expended more than

1,877.52 hours, through the announcement of the settlement on July 25, 2016, to litigate Relators'

claims, to assist the Government and to assist co-counsel in developing and executing the joint,

strategic prosecution of the claims against the defendants and in responding to numerous Motions to Dismiss filed by the Defendants' experienced and nationally known law firms.[5]

On July 25, 2016, the DOJ held a Relators' conference in its offices at the Dallas Federal Building. DOJ's lead counsel announced that the U.S. had settled in principle all Relators' claims in the extant pleadings against the Settlement Defendants. Relators were given a chance to comment and ask questions, and all of them shortly thereafter approved the settlement and the proffered Relators' Share of 20%. The settlement agreement, although not yet completely funded (Texas AG), should be fully funded in the immediate future, according to the DOJ's counsel, Curo's counsel on behalf of Curo and the affiliated Settlement Defendants and the Texas Assistant Attorney General. The U.S. directed Relators' counsel to negotiate statutory fees and expenses directly with Curo's counsel. Counsel for the Settlement Defendants agreed that Defendants would pay statutory fees in an amount to be negotiated or set by the Court and solicited statutory submissions from Relators' counsel.

Fifth Circuit and other federal law on the enforcement of a settlement agreement is quite clear and well known. "A settlement agreement, once entered into, **cannot be repudiated** by either party and **will be summarily enforced**." *United States v. City of New Orleans*, 731 F.3d 434, 439 (5th Cir. 2013); *Cia Anon Venezolana de Navegacion v. Harris,* 374 F. 2d 33, 35 (5ᵗʰ Cir. 1967); *Johnson v. Target Corp.*, No. 4:13-CV-182, 2014 U.S. Dist. LEXIS 112628 (E.D. Tex. Aug. 14, 2014) (same); *Promotion in Motion v. Kenny's Candy Co.,* Civ. No. 97-3512 (JCL), 1999 U.S. Dist. LEXIS 22173, at *16 (D.N.J. June 24, 1999) (**mediated settlement in principle enforced***); Robinson v. Cason,* No. 01-11-00916-CV, 2013 Tex. App. LEXIS 8088, at *8 (Tex. App.—

---

[5] *See* submit the Declaration of Samuel L. Boyd, App'x at 1-8.

Houston [1ˢᵗ Dist.] July 2, 2013) (**enforcing settlement in principle** transcribed during deposition).

Moreover, it is not necessary that the settlement agreement is memorialized in writing or that all details must be agreed upon before an agreement exists. O**nly the essential terms** must be agreed upon and a settlement will be enforced **without** an executed writing, in fact, **without a writing at all**, under federal law.

A Texas Federal District Judge examined the choice of law question just last summer:

A district court has the inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties. Moreover, in this case, the settlement term sheet expressly gave the court the power to enforce the agreement. When considering the validity of a settlement agreement **in a case involving federal law** . . . the court applies **federal law.** Under federal law, a settlement agreement is a contract. The federal law of contracts uses the core principles of the common law of contracts that are in force in most states. Because the federal common law of release is largely undeveloped and federal contract law is largely indistinguishable from general contract principles under state common law, the court may rely on federal cases, state contract law cases, and other treatises to the extent it finds them persuasive.

The primary goal of contract construction is to give effect to the parties' intent as reflected in the terms of the contract. The contract must be read as a whole, and effect must be given to all parts if possible. Courts must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. ***Unambiguous language must be enforced as it is written***. Language is ambiguous only if it is susceptible to more than one reasonable interpretation. ***Language is not ambiguous merely because the parties interpret it differently.*** Whether a particular provision or the interaction among multiple provisions creates an ambiguity is always a question of law, and ambiguity must be determined by the four corners of the document without reference to parole evidence. **Only** where a contract is first determined to be ambiguous may the courts consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument.

*Goodman v. Smart Modular Techs., Inc.,* No. H-14-1380, 2016 U.S. Dist. LEXIS 112436, at *5-7 (S.D. Tex. Aug. 23, 2016) (internal citations and quotations omitted). This conclusion accords with the law in other areas of federal question jurisdiction. *See, e.g., Maynard v. Durham & Southern Railway Co.,* 365 U.S. 160, 161, 81 S. Ct. 561, 562, 5 L. Ed. 2d 486 (1961) (federal law determines

validity of releases under Federal Employers' Liability Act); *Strange v. Gulf & South American Steamship Co.,* 495 F.2d 1235, 1236 (5th Cir. 1974) (**federal law** determines validity of **oral settlement agreements** within federal courts' admiralty and maritime jurisdiction); *Theatre Time Clock Co. v. Motion Picture Advertising Corp.,* 323 F. Supp. 172, 175 (E.D.La.1971) (**federal law** determines validity of **oral settlement agreements** in **federal antitrust actions)** (dictum); *Marquette Bus. Credit, Inc. v. Gleason,* No. 14-cv-354 (MJD/LIB), 2015 U.S. Dist. LEXIS 71315 (D. Minn. Apr. 27, 2015) (**settlement in principle** enforced).

Fifth Circuit and other federal courts have also made clear that there need not be an executed writing and term sheet for an agreement to be enforceable under federal law, and **even an oral agreement will be enforced.** *See Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1208-09 (5th Cir. 1981) (federal law applicable to enforcement of settlement agreement where substantive rights arise from federal law; federal law **does not require** that settlement agreement be reduced to writing; absent a factual basis rendering it invalid, *oral agreement to settle Title VII claim enforceable against plaintiff who knowingly and voluntarily agreed to terms or authorized attorney to settle dispute*); *Lozano v. Metro. Transit Auth.*, No. H-14-1297, 2016 U.S. Dist. LEXIS 94031, at *6-13 (S.D. Tex. July 19, 2016).

Federal courts have held in a variety of federal causes of action, including FCA cases, that public policy favors settlement:

> Sound public policy encourages the voluntary **settlement** of disputes. *See, e.g., U.S. v. Purdue Pharma L.P.*, 600 F.3d 319, 332 (4th Cir. 2010) (**false claims act** *qui tam* action); *Robinson v. Shelby County Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009) (desegregation class action); *Schering-Plough Corp. v. F.T.C.*, 402 F.3d 1056, 1072-73 (11th Cir. 2005) (patent litigation); *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 321-22 (5th Cir. 2003) (**Title VII** employment discrimination claim); *In re Exxon Valdez*, 239 F.3d 985, 987 (9th Cir. 2001) (environmental tort claims); *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001) ("delays resulting from good faith attempts to negotiation [sic] a **settlement** in the

trademark context do not result in laches").

*In re Wilcox,* 438 B.R. 428, 432 (Bankr. D. Colo. 2010).

Accordingly, the enforceability of even an oral argument under federal law is not limited to Title VII employment cases, but generally applicable in support of the federal policy favoring settlements in actions brought under federal law. *See, e.g.*, *Fulgham v. Wofford*, No. 4:13CV182-DMB-DAS, 2014 U.S. Dist. LEXIS 179909, at *7 (N.D. Miss. Oct. 28, 2014) (oral settlement of agreement to settle patent and other claims enforceable."); *Lawson v. McDermott, Inc.,* No. 94-1338 SECTION "C" (4), 1995 U.S. Dist. LEXIS 14679, at *4-5 (E.D. La. Oct. 4, 1995) (**oral** agreement to settle personal injury cause of action within admiralty and maritime jurisdiction of the **federal** courts is **enforceable** and cannot be repudiated; citing *Strange v. Gulf & South American Steamship Co., Inc.,* 495 F.2d 1235, 1236 (5th Cir. 1974)); *Thompson v. Cont'l Emsco Co.,* 629 F. Supp. 1160, 1163 (S.D. Tex. 1986) (Court has inherent power to summarily **enforce oral settlement** agreement reached in a maritime case pending before it.); *Theatre Time Clock Co. v. Motion Picture Advert. Corp.,* 323 F. Supp. 172, 175 (E.D. La. 1971) (antitrust suit under federal Sherman and Clayton Acts determined by federal law and **oral** compromise of settlement enforceable under federal as well as Louisiana law).

Further, under **federal** law, "[o]ne who attacks a **settlement** must bear the **burden** of showing that **the contract** he has made is **tainted with invalidity**." *Mid-South Towing Co.*, 733 F.2d at 392 (5th Cir. 1984) (quoting *Callen v. Pa. R.R. Co.*, 332 U.S. 625, 630, 68 S. Ct. 296, 92 L. Ed. 242 (1948)). Under *Mid-South* the party opposing enforcement of the settlement based on a challenge to the validity of the agreement must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement. *Mid-South*, 733 F.2d at 390. *Fulgham,* 2014 U.S. Dist. LEXIS 179909, at *7.

In *City of New Orleans*, "summary enforcement" meant that the Court of Appeals refused to vacate entry of judgment on a consent decree, which the district court had entered without amendment **after numerous amendments** had been proposed, **a fairness hearing** and **status conferences held**, and **revised drafts circulated** in the course of **continuing negotiations**. 731 F.3d at 436-37. The Court of Appeals noted that "[F]or purposes of determining whether the [party] entered into an enforceable settlement agreement, **it is irrelevant** that they **attempted to revoke** their consent prior to entry of judgment." *Id.* at 439 (citing *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 268 (5th Cir. 1995) and *Stovall v. City of Cocoa*, 117 F.3d 1238, 1242-43 (11th Cir. 1997) (holding that the district court was not free to reject the consent decree solely because the City of Cocoa no longer wished to honor its agreement)).

Thus, the Settlement Defendants are bound by their Settlement Agreement in principle, without regard to whether a final written agreement has been executed or details determined. Moreover, should the Settlement Defendants require Relators' counsel to litigate to secure their statutory fees, expenses and costs, Relators' counsel are entitled to **additional** fees and expenses for litigating their fee claim and securing compensation. More fees, more expenses. *See, e.g., Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir.1985) (In the context of an attorneys' fees request under a similar statute, this Court stated that a prevailing plaintiff is entitled to an award of attorneys' fees for efforts in **litigating a fee claim** and **securing compensation.**); accord *Knighton v. Watkins*, 616 F.2d 795, 800 (5th Cir. 1980)( It is settled that a prevailing plaintiff is entitled to **attorney's fees** for the **effort entailed in litigating** a fee claim and **securing compensation.**).

**III. Analysis**

**A. Rates Claimed, Justified**

A reasonable attorney's fee "is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." *Blum*, 465 U.S. at 897. The "lodestar" approach is the method customarily used to determine attorneys' fees under fee-shifting statutes. *United States v. $186,416.00 in United States Currency*, 642 F.3d 753, 755 (9th Cir. 2011) (citing, *inter alia, Blanchard v. Bergeron*, 489 U.S. 87, 93-94, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989). Courts of Appeals that have considered the proper method of determining reasonable attorneys' fees in False Claims Act cases have adopted the "lodestar" method of multiplying the reasonable hourly rate by hours reasonably expended, and considering in addition to the lodestar, the twelve-factor test set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974) as limited by the Supreme Court in *Blanchard*, 489 U.S. at 92-93, 109 S. Ct. at 943-44 (acknowledging *Johnson* factors as relevant to adjustment to lodestar, holding no one factor can substitute, and holding fee agreement is only one factor to be considered in award calculation and does not limit the award); *Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) (holding where fee applicant carries burden of showing rate and number of hours are reasonable, product is **presumed** to be reasonable fee and that novelty and complexity of issues, special skill and experience of counsel, quality of representation, and results obtained fully reflected in the lodestar not independent bases for increasing basic fee award but considerations regarding reasonableness of time and rate) and *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933; 76 L. Ed. 2d 40 (1983) (adopting hybrid approach that shared elements of *Johnson* and Third Circuit lodestar method starting with number of hours reasonably expended multiplied by reasonable hourly rate and allowing for adjustment upward or downward on the basis of Johnson factors). *See, e.g., United States ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 356-57 (4th Cir. 2009); *Gonter v. Hunt Valve Co*.,

510 F.3d 610, 621 & n.7 (6th Cir. 2007); *United States ex rel. Jacobs v. Patrol Servs.*, 202 Fed. Appx. 357, 359 (11th Cir. 2006); *Neal v. Honeywell Inc.*, 191 F.3d 827, 833 (7th Cir. 1999).

The *Johnson* factors, which provide guidance in determining the reasonable number of hours and the reasonable rate include:

(1)    The time and labor required;
(2)    The novelty and difficulty of the questions;
(3)    The skill requisite to perform the legal service properly;
(4)    The preclusion of other employment by the attorney due to acceptance of the case;
(5)    The customary fee;
(6)    Whether the fee is fixed or contingent;
(7)    Time limitations imposed by the client or the circumstances;
(8)    The amount involved and the results obtained;
(9)    The experience, reputation, and ability of the attorneys;
(10)    The "undesirability" of the case;
(11)    The nature and length of the professional relationship with the client; and
(12)    Awards in similar cases.

The application of the *Johnson* factors is described following each factor:

**(a) Time and Labor Required**. To date, B&A expended 2,060.42 hours over three (3) years through July 25, 2016, the date of the announcement by the DOJ of the Settlement Agreement in principle ($1,001,123.60 ), and from January 23, 2017 through April 3, 2017 ($112,053.00) while working to preserve their right to recover statutory fees and expenses, for total reasonable <u>fees</u> of **$1,118,071.79**[6] at hourly rates of $750 per hour for Partner Samuel L. Boyd; $500 for Senior Associate Attorney Catherine Jobe; $350 for Associate Attorneys; and $190 for Paralegals in the case. False Claims Act cases typically require substantial professional efforts in complex factual scenarios. The firm exercised good billing judgment, including non-block entries that reflect proportionate time for billable

---

[6] This figure does not include $4,833.89 for expenses.

work done. Further, the firm has eliminated charges for clerical services and working meal expenses. These fees and expenses are relatively modest for a typical FCA case, as it was settled as to these Defendants prior to the commencement of formal pretrial discovery. The rates are also well within the rates charged by other firms in the Dallas Metroplex which range, for experienced partners, to well over $1,000 per hour in FCA cases. As a small firm, wasting hours or committing unnecessary time to tasks is antithetical to surviving FCA burdens on the firm's staff. Efficiency is critical to success.

**(b) Novelty and Difficulty**. B&A believes that various issues involved in this case have been factually complex and challenging, often including the research and analysis of complicated information and documentation. Because the kickback routines involved so many entities and individuals, the investigation of the circumstances and marshalling of facts was challenging. The organization of the claims and the pleading of the facts constituting FCA violations required above average factual detail concerning circumstances not memorialized by Defendants in the course and scope of their fraudulent course of conduct. Dozens of conversations had to be investigated, characterized, and their accuracy confirmed with different persons with knowledge. In addition to a challenging, difficult organization and confirmation of facts, this case has required counsel to draft, review, and address many motions to dismiss (and their respective legal positions) and to confer and coordinate extensively with co-counsel in pursuit of resolution. Finally, because of the potential of related litigation to affect the rights of the parties in this case, professional efforts had to be dedicated to reviewing and remaining current on those related proceedings in the Bankruptcy Court for the Northern District of Texas, Dallas County

District Court (Brown, Trustee, v. Sage et al, 134th Judicial District Court) and in the Delaware Chancery Court (White and Kumar v Curo Texas Holdings, LLC).

**(c) Skill Requisite to Perform the Legal Service Properly.** Relators' Bryan and Wendt hired B&A and Marchand & Rossi to investigate, analyze, evaluate and prosecute their claims. B&A has 15 years of experience litigating Federal False Claims Act cases around the nation. The attorneys and paralegals of B&A, a Dallas law firm, working on the consolidated cases are specialists in complex business litigation, with first-chair experience in financial, antitrust, real estate, securities and fiduciary disputes, as well as an active False Claims Act litigation docket. Sam Boyd knows from experience that attorneys without such expertise would have expended many more inefficient and unfocused hours attempting to understand the unique aspects and risks attendant to a False Claims Act case and addressing the issues raised in this case, likely, with less success.[7]

**(d) Preclusion of Other Employment.** The time demands of Relators' representation in this case necessarily resulted in some disruption of other potential employment engagements undertaken by B&A. Any FCA case requires an above average professional and financial commitment which necessarily precluded work for other potential clients which present less risky prospects for success, or hourly compensation arrangements. On the margin, hourly based client relationships, while helpful to business cash flows, often can't be properly serviced during various time periods along the FCA case's timeline, resulting in the referral to other counsel for such work.

---

[7] *See* Boyd Declaration, App'x at 4-5.

**(e) Customary Fee.** Sam Boyd bills for professional services at $750 per hour, Catherine Jobe at $500 per hour, associates at $350 and legal assistants at $190 per hour. *Id.* Those rates for the complexity of this False Claims Act case are reasonable and well within the range of rates charged by similarly experienced counsel in Dallas, Texas, Metroplex. Sam Boyd bills at the rate of $750 per hour for complex litigation such as False Claims Act cases, because of the various factors of complexity, the expected time burden on the firm which burdens rest of its docket, the probable defense or prosecution expected of the adverse parties given the issues in dispute, the likelihood that there will not be an early settlement and the high risk of the outcomes, and the extent of any major litigation expenses, such as expert witnesses, IT support, depositions, travel and related litigation expenses. The hourly rates charged, generally, by Dallas Metroplex counsel in False Claims Act cases and similar complex matters, considering the size and degree of responsibility and difficulty, the complexity of the problems and issues involved in the cases range from $400 (Associates) to $1,200 (senior attorneys). B&A's rates are in the mid-range for the experience, expertise, reputation and performance of other professionals in the Dallas metroplex. The firm's rates are no greater, and in some instances are materially lower, than those being charged by professionals with similar qualifications and even less substantive or first-chair experience in similar complex business or False Claims Act litigation in the Dallas Metroplex. Sam Boyd, by virtue of his experience in False Claims Act cases since 2002 is well aware of rates charged by both Relators' and Defense counsel most of whom generally charge more than B&A in the same cases.

**(f) Whether the Fee is Fixed or Contingent.** B&A's fees are contingent upon a successful resolution on the merits or by settlement in this False Claims Act case. B&A incurred

significant expense and significant risk in the investment of 2,060.42 hours, cumulatively, of firm time **(1)** from the beginning of representation through July 25, 2016 when the DOJ announced the Settlement Agreement in principle to Relators' counsel in a meeting in Dallas, and **(2)** from the entry of the January 23, 2017 Order dismissing Relators through April 3, 2017, in efforts to protect the right to recover statutory fees and expenses. All of this substantial firm investment was done without any guarantee of payment.

**(g) Time Limitations.** The representation of a plaintiff in False Claims Act litigation is inherently time consuming, and in the first few months of a representation, time is very sensitive due to First-to-File considerations making time of the essence. Nonetheless, in trying to process this case to enable the United States to receive maximum value, B&A and joint counsel were required to provide capable legal representation within the time limitations imposed or required by the False Claims Act, the Federal Rules, the Local Rules, counsel for various parties in interest and this Court. The increasing time burdens on counsel make the False Claims Act pretrial process financially rewarding for defense counsel (hourly) and, correlatively, very risky for Relators' counsel (contingency) in major cases.

**(h) Amount Involved and Results Obtained.** B&A has assisted Relators and joint counsel in all facets of this case. The United States continued to investigate the allegations in the joint amended complaint after the Complaint was unsealed on July 14, 2015. On July 25, 2016, the United States disclosed to Relators' counsel that it had reached a Settlement Agreement in principle with the Settlement Defendants. On October 4, 2016, the United States filed its Motion to Partially Intervene for Good Cause against International Tutoring Services LLC, Goodwin Hospice LLC, Phoenix Hospice, LP and Curo Health Services,

LLC for Purpose of Settlement. B&A's requested compensation of $1,122,905.68 for statutory fees and expenses is fair, reasonable and necessary under the circumstances of this case. The effort required was justified by the successful outcome of the case. B&A is a small firm with a demanding False Claims Act docket which requires that it address all of its cases in a way that optimizes efficiency and effectiveness in order to achieve positive outcomes for the United States and its Relators.

**(i) Experience, Reputation, and Ability of the Attorneys.** B&A proprietor Sam Boyd and senior associate Catherine Jobe have regularly appeared in significant cases over many years, including state and federal cases in Texas, other states and in the U.S. Virgin Islands. The firm and its owner are "AV" rated by their peers in the Martindale-Hubbell international legal directory. The firm has successfully concluded False Claims Act cases since 2006 that have generated approximately $190 million in recoveries for federal and state governments. Sam Boyd is an active *Director Emeritus* of the Texas Trial Lawyers Association and the Dallas Trial Lawyers Association. In 2015 he was honored as a Distinguished Alumnus of the Texas Tech School of Law.

**(j) Undesirability of Case.** B&A has not found this case to be undesirable but rather considers the issues that have been raised in this case to be of the type that B&A is trained to adequately address. On the other hand, the (1) risk of non-payment for significant professional services and litigation expenses, and (2) the extended time required to resolve False Claims Act cases, such as this one, has not been overlooked nor is it unappreciated by B&A and other Relators' counsel. Counsel inexperienced with False Claims Act cases would no doubt consider these risks undesirable. That fact is borne out by the relatively

small number of Relators' counsel daring to take on these cases, estimated to be less than 500 nationwide.

**(k) Nature and Length of Professional Relationship with Client.** B&A was retained and began its involvement in the case in July 2013 and invested 2,060.42 hours for two active timelines: **(1)** through the July 25, 2016 announcement of the Settlement Agreement in principle with the Settlement Defendants; and **(2)** from the entry of the January 23, 2017 Order dismissing Relators Bryan and Wendt through April 3, 2017, to protect their right to recover statutory fees and expenses. The time required is not insubstantial but is expected, with Relators seeking material recoveries for the United States.

**(l) Awards in Similar Cases.** Based on B&A's experience, the fees requested are in line with fees approved by state and federal courts, within and without the State of Texas. Further, the rates charged and efforts required are consistent with other False Claims Act cases which B&A has litigated, including litigation in the Northern District of Texas. The statutory fee total is relatively modest in this case, because of the stage at which the case settled. When discovery commences, the statutory fees and expenses often reach multiple millions of dollars. A law firm providing several millions of dollars of professional time in hard fought FCA cases is the rule rather than the exception.

## V. CONCLUSION

After analyzing the "lodestar" issues and comparing the request under the *Johnson* factors in their entirety, the fees, expenses and costs incurred by B&A should be awarded $1,122,905.68 Marchand & Rossi will submit its statutory fees and expenses request separately for review by the Court.

WHEREFORE, PREMISES CONSIDERED, the Boyd & Associates respectfully requests payment of reasonable and necessary statutory fees incurred from (1) its retainer by Relators through the DOJ's announcement of the settlement in principle on July 25, 2016, and (2) the entry of the Order dismissing Relators Bryan and Wendt through the present in efforts to protect Relators' right to recover statutory fees and expenses in the amount of $1,122,905.68 incurred in the above captioned (consolidated) case, as well as supplemental fees and expenses should the fees and expenses dispute continue in this court and/or on appeal to the Fifth Circuit Court of Appeals or the United States Supreme Court, in the event of an appeal to the Court of Appeals for the Fifth Circuit, an additional approximately $150,000.00; in the event of a petition for rehearing *en banc,* additionally approximately $30,000.00; in the event of a petition for writ of certiorari to the United States Supreme Court, additionally approximately $50,000.00, and in the event the Supreme Court agrees to hear the case, additionally approximately $50,000.00.

Dated: April 13, 2017

UNITED STATES OF AMERICA, ex rel.
Christopher Sean Capshaw, et al.

Respectfully submitted,


**BOYD & ASSOCIATES**

By: /s/ Samuel L. Boyd
**Samuel L. Boyd, P.C.**
SBOT # 02777500
Catherine C. Jobe
SBOT # 10668280
6440 North Central Expressway
Suite 600
Dallas, Texas 75206-4101
Telephone (214) 696-2300
Facsimile (214) 363-6856
sboyd@boydfirm.com


*ATTORNEYS FOR RELATORS KEVIN BRYAN
AND FRANKLIN BROCK WENDT*

## CERTIFICATE OF CONFERENCE

I hereby certify that as of April 13, 2017, I have conferred with Stacy Brainin, counsel for Defendants Curo Health Services, LLC; Hospice Plus, L.P.; Goodwin Hospice, LLC; International Tutoring Services, LLC, f/k/a International Tutoring Services, Inc., d/b/a Hospice Plus, and the parties could not reach an agreement.

/s/ Samuel L. Boyd_____
Samuel L. Boyd


## CERTIFICATE OF SERVICE

On April 13, 2017, a copy of this motion was served upon counsel for the United States, and counsel for all defendants, in accordance with the Federal Rules of Civil Procedure.

/s/ Samuel L. Boyd_____
Samuel L. Boyd