IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA *ex rel.*, §
CHRISTOPHER SEAN CAPSHAW, *et al.*, §
　§
　Plaintiffs, §
　§
v. § Civil Action No. 3:12-CV-4457-N
　§
BRYAN K WHITE, *et al.*, §
　§
　Defendants. §

# ORDER

This Order addresses Kevin Bryan and Franklin Brock Wendt's (collectively, "dismissed relators") counsel, Marchand & Rossi, LLP's ("M&R") motion for attorneys' fees and motion to enforce settlement [314] and Boyd & Associates' ("B&A") motion for attorneys' fees [296]. The Court denies the motions.

## I. ORIGINS OF THE DISPUTE

This case is a consolidated qui tam action that arises out of an alleged scheme of illegal kickbacks between the named Defendants brought by relators Christopher Capshaw and the dismissed relators. The Court presumes familiarity of the underlying facts of this lawsuit as set forth in the Court's January 23, 2017 Order. As part of this ongoing qui tam action, the Department of Justice ("DOJ") negotiated a settlement with Defendants International Tutoring Services, LLC, Goodwin Hospice, LLC, Phoenix Hospice, LP, Hospice Plus, LP, and Curo Health Services, LLC (collectively, the "Settlement Defendants") in summer 2015. The DOJ informed the relators of the settlement and then

moved to partially intervene for the purpose of settlement against the Settlement Defendants. *See* Order, October 6, 2016 [235]. The relators' attorneys then began negotiations for determination of attorneys' fees to be included in the final settlement. Prior to the final execution of the settlement, the Court dismissed relators Bryan and Wendt under the first-to-file rule. *See* Order, January 23, 2017. While the Settlement Defendants agreed to pay remaining relator, Christopher Capshaw's attorneys $400,000, the Settlement Defendants and B&A and M&R, respectively, did not reach such an agreement on reasonable attorneys' fees. Instead, the final settlement agreement, executed in March, reserved the rights of the dismissed relators "to assert their claims for reasonable expenses, attorney's fees, and costs under 31 U.S.C. § 3730(d), or upon any other legal grounds or theory." *See* App. to M&R Mot. for Att'ys' Fees Ex. J (hereafter "Settlement Agreement") 134, ¶ 3 [314-1]. As part of the settlement, the relators received $2,420,852.00. *Id.* at ¶ 2.

B&A now moves under Federal Rule of Civil Procedure 54(d) for statutory attorneys' fees in the amount of $1,122,905.68. *See* Mot. for Approval and Award of Statutory Attorneys' Fees (hereafter "B&A Mot. for Attorneys' Fees") 3 [296]. B&A first contends they are entitled to mandatory statutory attorneys fees under section 3730(d) of the False Claims Act("FCA"). In the alternative, B&A contends the Settlement Defendants agreed to pay reasonable attorneys fees, and the Court should enforce an alleged oral settlement agreement or a settlement agreement in principle. *See* B&A Mot. for Attorneys' Fees 8.

M&R likewise moves for statutory attorneys' fees under section 3730(d) of the FCA in the amount of $561,423.11. *See* Mot. for Approval and Award of Reasonable Expenses,

Attorney's Fees, and Costs and Mot. to Enforce Settlement (hereafter "M&R's Mot. for Attorneys' Fees") [314]. M&R also moves to enforce the settlement agreement. *Id.* at 12. M&R likewise claims that per an alleged implied contract, the Settlement Defendants are bound by agreement to pay M&R's reasonable attorneys' fees, as determined by the Court.

## II. THE COURT DENIES THE MOTIONS

### A. *Neither B&A nor M&R are Statutorily Entitled to Attorneys' Fees*

The False Claims Act ("FCA") provides that parties are entitled to "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs" in addition to any share of the proceeds of the litigation or settlement. 31 U.S.C. § 3730(d)(1). In the Fifth Circuit, "[o]nly those parties that are properly a part of the qui tam action are statutorily entitled to the award of attorneys' fees and expenses." *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 450 (5th Cir. 1995). Thus where relators are not proper parties to the qui tam action under one of the FCA's jurisdictional bars, their attorneys "are not statutorily entitled to attorneys' fees and expenses." *Id.* at 453. For instance, in *Federal Recovery Services,* the Fifth Circuit held that the attorneys of relators barred by the public disclosure jurisdictional bar set forth in section 3730(e)(4)(A) of the FCA, were not statutorily entitled to attorneys' fees and expenses. *Id.* at 450, 454. Thus, B&A and M&R's statutory right to attorneys' fees "depends in the first instance upon their client's status as a party in the case." *Id.* at 450.

The Fifth Circuit treats the first-to-file rule as a "jurisdictional bar." *See, e.g. U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 373 (5th Cir. 2009). Cases from

district courts within the Fifth Circuit likewise confirm that the first-to-file rule is "jurisdictional in nature," and routinely dealt with under a motion to dismiss under Rule 12(b)(1). *U.S. ex rel. Denenea v. Allstate Ins. Co.*, 2011 WL 231780, at *2 (E.D. La. 2011); *see also United States v. Planned Parenthood of Houston*, 570 F. App'x 386, 390 (5th Cir. 2014) (reviewing district court's dismissal of later filed qui tam complaint under motion to dismiss for lack of jurisdiction). B&A and M&R contend that unlike the public disclosure bar at issue in *Federal Recovery Services,* the first-to-file rule does not implicate the Court's subject matter jurisdiction. Under this argument, the first-to-file rule implicates only a relator's statutory standing and therefore Brock and Wendt, despite being dismissed relators, are still entitled to statutory attorneys' fees. B&A and M&R rely primarily on a recent Supreme Court case, *Kellogg Brown & Root Servs., Inc. v. U.S., ex rel. Carter*, 135 S. Ct. 1970 (2015). In *Carter,* the Supreme Court addressed the relevant statue of limitations before the first-to-file rule. *See* 135 S. Ct. at 1978. According to B&A and M&R, the Supreme Court would not have addressed a limitations issue before a jurisdictional issue and thus the first-to-file rule is not a jurisdictional bar.

There is a clear circuit split as to whether the first-to-file rule is jurisdictional. *Compare U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Baxter Healthcare Corp.*, 772 F.3d 932, 936 (1st Cir. 2014) ("The 'first-to-file' rule is, at least in this Circuit, jurisdictional."), *with U.S. ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 119 (D.C. Cir. 2015) (holding the first-to-file bar is not jurisdictional and "the first-to-file rule bears only on whether a *qui tam* plaintiff has properly stated a claim"); *see also U.S. ex rel. Carter v.*

*Halliburton Co.*, 144 F. Supp. 3d 869, 881 n.6 (E.D. Va. 2015) (collecting cases). At present, both the D.C. Circuit and the Second Circuit have held that the first-to-rile rule is not jurisdictional, in part relying on the Supreme Court's recent decision in *Carter*. *See United States ex rel. Hayes v. Allstate Ins. Co.*, 853 F.3d 80, 85 (2d Cir. 2017). However absent controlling law that the first-to-file rule is not jurisdictional, this Court is bound by Fifth Circuit precedent. At least one court within the Fifth Circuit that has addressed this issue post *Carter* continued to treat the first-to-file bar as jurisdictional under the precedent established in *Branch Consultants*. *See United States ex rel. Doe v. Lincare Holdings, Inc.*, 2017 WL 752288, at *3 (S.D. Miss. 2017) (holding putative relator's complaint was "jurisdictionally barred" and dismissing the complaint under Rule 12(b)(1)). Moreover courts in other circuits that likewise treat the first-to-file rule as jurisdictional have continued to do so post *Carter. See United States ex rel. Cunningham v. Millennium Labs., Inc.*, 202 F. Supp. 3d 198, 204 (D. Mass. 2016); *see also Halliburton*, 144 F. Supp. 3d at 881 n.6 (refusing to deviate from clearly established precedent that the first-to-ile rule is jurisdictional "absent contrary controlling law on the issue"). Accordingly, the Court holds the first-to-file rule remains a jurisdictional bar and under the clear precedent established in *Federal Recovery Services,* Bryan and Wendt were not proper parties to the qui tam action and thus are not statutorily entitled to attorneys' fees or expenses. *See* 72 F.3d at 450.

### B. *There Is No Valid Implied Contract To Pay Movants' Attorneys' Fees*

Thus the Court is left to address the attorneys' claims that the Court should enforce an alleged implied contract to pay attorneys' fees. The movants contend that the Settlement Defendants agreed to pay the relators' reasonable and necessary attorneys' fees, costs and expenses (collectively "fees"), to be determined by negotiation or if necessary by petition to the Court. *See* B&A Reply 1 [367]. The movants argue that the communications between them and the Settlement Defendants' counsel indicate the Settlement Defendants agreed to pay the fees and that based on the Settlement Defendants' conduct it was reasonable for the relators to believe the Settlement Defendants had agreed to pay reasonable fees.

"'[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties.'" *Shepherd v. Wells Fargo Bank*, 2016 WL 4435267, at *2 (W.D. Tex. 2016) (quoting *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994)). "[S]ettlement agreements, when fairly arrived at and properly entered into, are generally viewed as binding, final and as conclusive of the rights of the parties as is a judgment entered by the court." *Rodriguez v. VIA Metro. Transit Sys.*, 802 F.2d 126, 128 (5th Cir. 1986) (*citing Thomas v. Louisiana*, 534 F.2d 613, 615 (5th Cir. 1976)). "Questions regarding the enforceability or validity of such agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law." *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). "Whether there is an agreement is governed by the federal common law of contracts, which uses the core principles of the common law of contracts that are in force in most states." *Smith v. United*

*States*, 328 F.3d 760, 767 n.8 (5th Cir. 2003) (internal quotations omitted). Because "'federal contract law is largely indistinguishable from general contract principles under state common law,' the court may rely on federal cases, state contract law cases, and other treatises to the extent it finds them persuasive." *Goodman v. Smart Modular Techs., Inc.*, 2016 WL 4435436, *2 (S.D. Tex. 2016) (quoting *In re Deepwater Horizon*, 786 F.3d 344, 354–55 (5th Cir. 2015)).

As a threshold matter, the parties do not challenge the validity of the settlement agreement itself, and the Court is satisfied that the settlement agreement is an enforceable contract. *See In re Capo Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012) (noting that in order to form an enforceable contract, there must be "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding"). Nor is there any ambiguity as to the terms of the settlement agreement. "The primary goal of contract construction "is to ascertain and give effect to the parties' intent as expressed by the words they chose to effectuate their agreement." *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015). "[E]very contract should be interpreted as a whole and in accordance with the plain meaning of its terms" such that "no provision is rendered meaningless." *Great Am. Ins. Co. v. Primo*, 2017 WL 749870, at *2 (Tex. 2017). "Unambiguous language must be enforced as it is written." *Goodman*, 2016 WL 4435436, at *2 (citing *Don's Bldg. Supply v. One Beacon Ins.*, 267 S.W.3d 20, 23 (Tex. 2008)). "'Only where a contract is first determined to be ambiguous may the courts consider the

parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument.'" *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)).

Here, there is no ambiguity as to the terms of the settlement agreement. The agreement clearly states that the Settling Defendants agreed to pay Capshaw $400,000.00 for reasonable expenses and attorneys' fees and that nothing in the agreement "shall be construed in any way to release, waive, or otherwise affect the rights of Dismissed Relators Kevin Bryan and Brock Wendt to assert their claims for reasonable expenses, attorney's fees, and costs pursuant to 31 U.S.C. § 3730(d), or upon any other legal grounds or theory." *See* Settlement Agreement 134, ¶ 3. The agreement also states "[d]ismissed relators Kevin Bryan and Brock Wendt reserve their right to claim their reasonable expenses, attorneys' fees, and costs under 31 U.S.C. § 3730(d), and Settling Defendants reserve their right to contest any such claims." *Id.* 136, ¶ 8. The Court has already determined that the dismissed relators are not statutorily entitled to attorneys' fees under section 3730(d). Thus the Court is left to determine whether under any other legal ground or theory, the dismissed relators are entitled to fees.

The only other legal theory that the movants assert is that the Settlement Defendants agreed to pay attorneys' fees under an implied contract theory. B&A and M&R argue that the emails between the relators' counsel and the Settlement Defendants' counsel created an implied contract that the Court should enforce in principle. It is true that courts have been willing to enforce settlement agreements where not all terms are finalized or included in a

written settlement agreement. Nor does the presence of an executed written settlement agreement foreclose the possibility that an agreement on attorneys' fees was reached prior to execution of the final settlement agreement. *See generally Neurovision Med. Prod., Inc. v. Medtronic Pub. Ltd. Co.*, 2017 WL 1247139 (E.D. Tex. 2017) (finding email exchange created an enforceable agreement prior to final written settlement, where plaintiff stated "we accept your offer" and email summarized terms, including payment amount). However, here there is no evidence that there was a valid implied contract as to the payment of the movants' fees.

The essential elements of a breach of implied contract action are "the existence of a valid implied contract, performance or tendered performance by the plaintiff, breach of the implied contract by the defendants, and damages resulting from the breach." *Fisher v. Blue Cross & Blue Shield of Texas, Inc.*, 2015 WL 5603711, at *10 (N.D. Tex. 2015) (citing *Sports Supply Grp., Inc. v. Col. Gas Co.*, 335 F.3d 453, 465 (5th Cir. 2003)). In order to have a valid implied contract, there must be "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *See In re Capo*, 669 F.3d at 279–80. Here, the email exchanges do not show any evidence of a valid implied contract. Particularly, there is no meaningful discussion as to the amount of fees, other than two proffered amounts by the movants and two denials by the Settlement Defendants. *See In re Deepwater Horizon*, 786 F.3d at 357 ("A putative contract is unenforceable if it lacks material or essential terms."). Moreover, there is also no evidence

that there was mutual assent. Movants attempt to rely on the conduct of the Settlement Defendants to show assent. But the conduct of the Settlement Defendants indicates a willingness to settle on an amount of attorneys' fees to be included in the final settlement in order to avoid costly continued litigation, not an agreement to pay reasonable attorneys' fees. Instead, there is, in fact, evidence that the movants understood that the Settlement Defendants rejected the movants' offers. *See* App. in Support of Settlement Defs.' Resp. Ex. A, 3 [343]. Accordingly, there is no implied contract for the Court to enforce.

### CONCLUSION

Based on the foregoing reasons, the Court denies the motions.

Signed July 10, 2017.

David C. Godbey
United States District Judge